# UNITED STATES DISTRICT COURT

# DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION<br>777 6th Street, NW<br>Washington, DC 20001-3723,<br>          Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF THE INTERIOR<br>1849 C Street, NW<br>Washington, DC 20240 and<br><br>NATIONAL PARK SERVICE<br>1849 C Street, NW<br>Washington, DC 20240,<br>          Defendants. | Civil Action No.  1:19-2482<br><br>COMPLAINT |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### (Freedom of Information Act)

During the 2018-2019 Government shutdown, the Department of the Interior ("DOI") and National Park Service ("NPS"), which are entrusted with management of the National Park System, decided to open to public visitors most of the natural parks in that system, such as Yellowstone National Park and Yosemite National Park, with only a skeletal staff to manage visitors and protect the resources.  DOI and NPS also decided to pay for some operations costs out of entrance and other fees which are to be set aside to pay deferred maintenance and other strategic expenditures under the Federal Lands Recreation Enhancement Act, 16 U.S.C. §§ 6801–6814 ("FLREA").

Promptly after the Government shutdown ended, Plaintiff National Parks Conservation Association ("NPCA") sought documents under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, relating to damages caused to National Park System resources and visitors from those decisions, the FLREA funds diverted to pay for opening the parks during the shutdown and otherwise relating to those issues.  Seven months later, DOI has not even acknowledged that request, neither DOI nor NPS has made any determinations as to what documents will be produced thereunder and neither agency has produced a single document thereunder.

Meanwhile, there is a growing prospect that another Government shutdown will occur this Fall.  NPCA needs the documents requested to exercise its rights, including among others the right to petition the Government to manage the National Park System differently in such an event and to educate its members, the public, and other governmental policymakers in support of that view.  Accordingly, NPCA brings this action against DOI and NPS under the Freedom of Information Act, 5 U.S.C. § 552, to compel the production of the agency records sought in NPCA's FOIA requests.

In support of which Plaintiff NPCA alleges as follows:

## PARTIES

1.      Plaintiff NPCA is a non-profit corporation exempt from taxation under 26 U.S.C. § 501(c)(3), founded in 1919 and organized under the laws of the District of Columbia.  NCPA was established with the goal of defending, promoting, and enhancing the National Park System, including by educating the public about the parks.

2.      Defendant DOI is an agency of the United States of America under 5 U.S.C. § 551(1).  DOI is headquartered at 1849 C Street, NW, Washington, DC 20240.  Congress has entrusted management of the National Park System to the Secretary of the Interior, acting through the Director of the NPS.  54 U.S.C. § 100101(a).  The Office of the Secretary is the office within DOI encompassing the Secretary of the Interior and his deputies and assistants.  DOI has provided that FOIA requests relating to documents in the possessions of the Office of

the Secretary should be sent to the FOIA officer for the Office of the Secretary.[1]  The Office of

the Secretary has possession, custody, and/or control of some of the documents that Plaintiff

seeks in response to its FOIA requests.

3.      Defendant NPS is a bureau of the DOI and is an agency of the United States of

America under 5 U.S.C. § 551(1).  NPS is entrusted by Congress, under the Secretary of the

Interior, with the management of the National Park System.  NPS is headquartered at 1849 C

Street, NW, Washington, DC 20240.  DOI has provided that FOIA requests to a particular

bureau of the DOI are to be sent to the FOIA officer for the bureau that maintains the records

sought.  FOIA requests of the NPS headquarters are to be sent to the NPS headquarters FOIA

Officer.  NPS's headquarters has possession, custody, and/or control of some of the documents

that Plaintiff seeks in response to its FOIA requests.

4.      Joshua Tree National Park ("JOTR") is a national park and a unit of the National

Park System managed by NPS, located in NPS's Pacific West Region.  Requests to units of the

National Park System are to be sent to the FOIA Officer of the regional office in which the unit

is located.  JOTR has possession, custody, and/or control of some of the documents that Plaintiff

seeks in response to its FOIA requests.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1331 (federal

question) and 5 U.S.C. § 552(a)(4)(B).

6.      Venue is proper pursuant to 5 U.S.C. § 552(a)(4)(B), because portions or all of the

responsive records are situated in this district, and because venue will lie in the District for the

District of Columbia for any FOIA case under that section.

---

[1] See 43 C.F.R. § 2.3; Dep't of the Interior, DOI FOIA Contacts,
http://www.doi.gov/foia/contacts (last visited Aug. 11, 2019).

## LEGAL BACKGROUND

7.     FOIA was enacted to ensure Government transparency and the expeditious disclosure of Government records.  FOIA establishes the public's right to access all federal agency records unless an agency satisfies its burden to show that it may withhold them pursuant to one of nine narrowly-construed FOIA exemptions.  *See* 5 U.S.C. § 552(b)(1)-(9); *id.* at § 552(a)(4)(B).

8.     FOIA imposes strict deadlines on federal agencies to respond to a request for records.  Within 20 working days of receiving a FOIA request, an agency must make a determination whether to comply with the request and notify the requester of its determination and the reasons for it.  *See id.* at § 552(a)(6)(A)(i).  The agency is required to indicate "the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions."  *Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013).

9.     An agency may extend this 20-day period in "unusual circumstances," as defined by 5 U.S.C. § 552(a)(6)(B)(iii), but only for a maximum of 10 additional working days.  *See id.* at § 552(a)(6)(B)(i); 43 C.F.R. § 2.16(a).

10.     If it is demonstrated that there is a "compelling need" for records, the bureau will provide expedited processing.  43 C.F.R. § 2.20(a).

11.     The agency must make any responsive records "promptly" available, *see* 5 U.S.C. § 552(a)(3)(A), unless it can establish that it may lawfully withhold those records from disclosure under the narrowly-defined FOIA exemptions listed in § 552(b).

12.     Administrative remedies are deemed exhausted when an agency fails to comply with applicable time limits.  *Id.* § 552(a)(6)(C)(i).

## STATEMENT OF FACTS

### *The 2018-2019 Government Shutdown*

13.     Congress mandates that the Secretary of the Interior, acting through the NPS

Director, is to "regulate the use of the National Park System by means and measures that

conform to the fundamental purpose of the System units, which purpose is to conserve the

scenery, natural and historic objects, and wild life in the System units and to provide for the

enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such

means as will leave them unimpaired for the enjoyment of future generations."  54 U.S.C.

§ 100101(a).

14.     Under the Anti-Deficiency Act, 31 U.S.C. § 1341, Government agencies are

prohibited from expending or obligating funds except out of funds appropriated by Congress,

with specified exceptions.  Absent such appropriations, therefore, DOI and NPS are prohibited

from paying their employees, with certain exceptions.  Accordingly, when appropriations lapsed

in 2013, NPS closed the National Park System to public visitors until the lapse in appropriations

ended.  NPS stated that this action was necessary to protect the National Park System.  NPS

faced criticism for that action from some quarters.

15.     On December 22, 2018, congressional appropriations to DOI and NPS again

lapsed, as they did for a large part of the U.S. Government.  Other parts of the Government

closed.  This is commonly referred to as a "Government shutdown."

16.     Earlier in 2018, DOI had adopted what it referred to as the 2018 National Park

Service Contingency Plan (the "2018 NPSCP") to address instances in which congressional

appropriations lapsed.  Under the 2018 NPSCP, many Parks would remain open to the public in

the event of such a lapse in appropriations despite the fact that NPS would furlough all but a

handful of NPS's staff.  There would be scant NPS presence to enforce restrictions on activities

and uses of those Parks by visitors, to warn them away from dangerous places and to provide the

other critical functions that NPS's rangers and other staff normally provide.  When there was a

Government shutdown in December 2018, the Secretary of the Interior implemented that plan,

which kept 84 million acres of the National Park System, in general, open to public visitors while

all but about 4,000 NPS employees were furloughed and not permitted to work.

17.     In early January 2019, apparently in light of widespread media reports about a

buildup of uncollected trash and other harm to Parks, the Secretary of the Interior readopted the

2018 NPSCP and added a provision to it (as revised and readopted, the "2019 Revised Plan").

The new provision directed NPS to use for ordinary operating expenses during the Government

shutdown funds that had been set aside under the Federal Lands Recreation Enhancement Act

(16 U.S.C. §§ 6801–6814) ("FLREA").  FLREA provides that, instead of turning over to the

U.S. Treasury entrance fees and certain other fees collected by individual Parks, those Parks may

retain that income to be used to pay for specified categories of expenses.  Examples of such

expenses are addressing maintenance backlogs, upgrading old visitor centers, or otherwise

enhancing visitors' experience.

18.     The 2019 Revised Plan, however, directed NPS to use fees collected pursuant to

FLREA "to provide basic visitor services in a manner that maintains restrooms and sanitation,

trash collection, road maintenance, campground operations, law enforcement and emergency

operations, and staffing entrance gates as necessary to provide critical safety information."[2]  The

2019 Revised Plan also provided that for "Parks that do not collect recreation fees or have

insufficient balances, the Director will determine whether available national or regional

---

[2] Dep't of the Interior, National Park Service's Revised Contingency Plan (Jan. 2019),
https://www.doi.gov/sites/doi.gov/files/2018-01-nps-contingency-plan.pdf.

recreation fees will be allocated to support activities as described above."[3]  NPS issued a press

release, announcing the use of "entrance, camping, parking and other fees collected from park

visitors that would typically be used for future projects at parks" to combat the buildup of trash,

maintain restrooms, and bring back additional law enforcement officers to patrol the parks.[4]

     19.    The Government shutdown ended on January 25, 2019.  While the full impact of

DOI's approach to the shutdown has not yet been publicly disclosed, there has been extensive

media coverage that is highly alarming.  That is so despite the fact that DOI has reportedly

attempted to control that narrative.  In testimony on February 6, 2019 before the Subcommittee

on Interior, Environment, and Related Agencies of the House Committee on Appropriations,

Philip A. Francis, Jr., a retired 41-year veteran of NPS and a former Park superintendent, spoke

for the Coalition to Protect America's National Parks (the "Coalition"), which has more than

1,600 members consisting of current and retired NPS officials.  He testified:

> [The Department's opening of the Parks during the shutdown] led to stories of the destruction of iconic resources, widespread accumulation of trash and related habituation of wildlife, human waste on trails due to closed restrooms, vandalism of property, and destruction of habitat from off-road vehicle use.
>
> Understanding the full extent of these impacts was obstructed by direction from the National Park Service that superintendents were not to talk to the press and to refer inquiries to the Washington office, where requests for interviews were refused.[5]

---

[3] *Id.*

[4] Nat'l Park Service, Statement on Protecting National Parks while Providing the American People Continued Access during the Lapse of Appropriations, attributable to P. Daniel Smith, Deputy Director, National Park Service (Jan. 6, 2019),
https://www.nps.gov/orgs/1207/updatelapse.htm.

[5] Statement of Philip A. Francis, Jr., Chair of the Executive Council, Coalition to Protect America's National Parks, *The Power of the Purse: A Review of Agency Spending Restrictions During a Shutdown*, Subcommittee on Interior, Environment, and Related Agencies Committee on Appropriations, House of Representatives (Feb. 6, 2019),
http://docs.house.gov/meetings/AP/AP06/20190206/108857/HHRG-116-AP06-Wstate-FrancisP-20190206.pdf.

20.     Some of the impacts to the Parks are attributable to the 2018 NPSCP's directive that "there will be no NPS-provided visitor services, including restrooms, trash collection, facilities and roads maintenance (including plowing), and public information."  Campgrounds would therefore remain open but without any NPS services.  As a result, no-one was collecting trash for removal despite numerous visitors to some Parks.  Moreover, toilets were not being cleaned or, in the case of portable ones, emptied, and when they overflowed, visitors began to eliminate onto the ground, leading to unsanitary conditions dangerous to human welfare, wildlife and the environment at large.  As former NPS Director Jonathan Jarvis explained, the buildup of food waste and other trash in parks "attract[s] wildlife.  This could result in tragic human/bear encounters, or habituate bears to human food, meaning the animals will have to be relocated or euthanized in the future."[6]  In Sequoia National Park, "[t]rash cans [we]re overflowing, resulting in wild animals eating and spreading trash around the park."[7]  In Joshua Tree National Park and Point Reyes National Seashore, "[h]uman waste has overwhelmed toilets . . . and has proliferated along trails, rivers and streams, potentially impacting water quality . . . ."[8]  Similar problems

---

[6] *Keeping US National Parks Open During the Shutdown is a Terrible Mistake*, The Guardian (Jan.3, 2019, 6:00 AM), https://www.theguardian.com/environment/2019/jan/03/national-parks-government-shutdown-trump.

[7] *Health and Safety Concerns Force Closure of Sequoia and Kings Canyon National Parks*, Your Central Valley (Jan. 2, 2019, 5:36 PM), https://www.yourcentralvalley.com/news/national-news/health-and-safety-concerns-forceclosure-of-sequoia-and-kings-canyon-national-parks/1684210871.

[8] *Keeping US National Parks Open During the Shutdown is a Terrible Mistake*, The Guardian (Jan. 3, 2019, 6:00 AM), https://www.theguardian.com/environment/2019/jan/03/national-parks-government-shutdown-trump. *See also* Aria Bendix, *It could take 300 years for Joshua Tree National Park to recover from the government shutdown*, Business Insider (Feb. 1, 2019, 12:46 PM), https://www.businessinsider.com/joshua-tree-national-park-damage-government-shutdown-2019-1; Ashley Boucher, *Joshua Tree national park 'may take 300 years to recover' from shutdown*, The Guardian (Jan. 28, 2019, 7:51 PM), https://www.theguardian.com/environment/2019/jan/28/joshua-tree-national-park-damage-government-shutdown; Kelley Czajka, *National Parks Suffered Irreparable Damage During the*

were reported at Great Smoky Mountain National Park.  A news report on Death Valley National

Park published a Park map showing extensive human feces and used toilet paper spread around

the Park, including on sand dunes where many visitors enjoy walking barefoot.[9]  According to

the Coalition, which conducted a survey of 15 parks,

> [A]t Yosemite National Park, trash, food scraps, and broken bottles were
> found in numerous locations, along with increased evidence of bear activity in
> picnic areas. … Portable toilets had been vandalized and there was human
> waste visible.  The Merced River dumping station was overflowing with
> frozen human waste on the ground.[10]

21.     The damages to the Parks, however, were not limited to trash and human waste.

For example, Joshua Tree National Park encompasses 1,200 square miles, but had only eight law

enforcement rangers patrolling that vast area during the shutdown.  While Park gates were left

open and staff levels were a fraction of normal levels, unsupervised visitors cut down ancient and

slow-growing Joshua trees, which provide vital support for birds, bats and insects, to make room

for vehicles to drive into off-limits areas with sensitive soil crusts.  Visitors there also created

miles of illegal "roads" through the desert and spray painted rocks.  A former superintendent of

that Park told the press that the damage there, such as the destruction of the trees, "is irreparable

for the next 200 to 300 years."[11]

---

*Shutdown*, Pacific Standard (Jan. 28, 2019), https://psmag.com/news/national-parks-suffered-irreparable-damage-during-the-shutdown.

[9] *See* Kyla Mandel, *Here's what happened in Death Valley during the shutdown, according to staff logs*, ThinkProgress (Feb. 6, 2019, 8:00 AM), https://thinkprogress.org/death-valley-national-park-shutdown-beeae102c9f1.

[10] Coalition to Protect America's National Parks, Park Impact Survey Summary of Results (Feb. 7, 2019), https://protectnps.org/2019/02/07/coalition-releases-summary-of-shutdown-impact-survey/.

[11] Aria Bendix, *It could take 300 years for Joshua Tree National Park to recover from the government shutdown*, Business Insider (Feb. 1, 2019, 12:46 PM), https://www.businessinsider.com/joshua-tree-national-park-damage-government-shutdown-2019-1; *see also* Allyson Chiu, *'A travesty to this nation': People are destroying Joshua trees in Joshua Tree National Park*, Wash. Post (Jan 11, 2019),

*Plaintiff's FOIA Requests*

22.     On January 28, 2019, just after the Government shutdown ended, Plaintiff submitted a FOIA request to the Office of the Secretary and to the Washington, D.C. headquarters of NPS seeking agency records related to the decision to keep units of the National Park System open to visitors during that lapse of appropriations, the decision to use FLREA funds to pay for operations during that time, and the implications and impacts of those decisions. See Attachment A hereto, a copy of that request.

23.     In light of media reports about particularly severe damage at some Parks, NPCA also submitted FOIA requests to particular Parks.  On February 21, 2019, Plaintiff submitted such a FOIA request to JOTR.  That request sought records related to that Park's operations during the 2018-2019 lapse of appropriations, damages or other impacts to the Park's resources and the impact of the decision to use FLREA funds on that Park.  See Attachment B hereto, a copy of the request to JOTR.  Attachments A and B are referred to together as the "Requests."

24.     Plaintiff requested fee waivers in its Requests, which have long been granted by DOI and NPS for previous FOIA requests because NPCA meets the requires for such a waiver, as it demonstrated in its Requests.

*The Agencies Fail to Respond and/or Produce the Requested Documents*

25.     On February 1, 2019, the FOIA Officer for NPS headquarters acknowledged receipt of the FOIA Request and shortly thereafter acknowledged the Request to the Office of the Secretary, although noting that that Office would be responding separately.  That FOIA Officer

---

https://www.washingtonpost.com/nation/2019/01/11/travesty-this-nation-people-are-destroying-joshua-trees-joshua-tree-national-park/?noredirect=on&utm_term=.7b9013f9267f.

also extended the 20 workday time limit by ten days, in accordance with 43 C.F.R § 2.15, due to the need to search for responsive records in multiple offices.

26.     The Superintendent of JOTR responded to NPCA, stating in effect that the NPS Regional Office would be responding as to the FOIA Request to JOTR.

27.     Nevertheless, NPCA has received no determination as to any of the above FOIA Requests and had received no documents responsive thereto.

### NPCA Asks for Expedited Processing As the Possibility of Another Government Shutdown Arises

28.     Meanwhile, Secretary of the Interior David Bernhardt has stated that, in the event of another lapse of appropriations, DOI would again open units of the National Park System to the public under the 2019 Revised Plan.[12]  Mr. Bernhardt has also stated that DOI would again direct Parks to use fees collected under FLREA as operating funds during any such shutdown.[13]

29.     At the date of the filing of this Complaint, Congress has not adopted any appropriations bills for the fiscal year beginning October 1, 2019.  Absent adoption of such bills before current year appropriations are exhausted or before the new fiscal year commences, another lapse in appropriations is possible.  Although the President on August 2, 2019 signed a bill that will now allow the appropriations process to proceed for that year, Congress must still approve and the President must sign bills actually appropriating funds if another lapse is to be avoided.  There are only a handful of legislative days remaining before the end of fiscal year September 30, 2019.

---

[12] David L. Bernhardt Responses to Questions from Chairman Murkowski, Senate Energy and Natural Resources Committee (Mar. 31, 2019), *available at* https://www.energy.senate.gov/public/index.cfm/files/serve?File_id=0DAC1334-E79F-4002-841C-F4352ABF7EFA.
[13] *Id.*

30.     The media has reported continued disagreements between and among branches and members of Congress and the Trump administration about spending and budgetary issues. It is accordingly possible that another lapse in DOI appropriations could occur imminently and that DOI will follow the same approach to managing units of the National Park System during that lapse.

31.     In light of the foregoing, on July 8, 2019 NPCA sent updated FOIA requests to the Office of the Secretary, the NPS headquarters and JOTR, supplementing the foregoing FOIA requests by extending the period covered by the requests forward to July 8, 2019 (the "Supplemental Requests").  The Supplemental Requests are attached hereto as Attachments C and D.

32.     Also on July 8, 2019, NPCA submitted letters to the Office of the Secretary, the NPS headquarters and JOTR seeking expedited processing of all the foregoing FOIA requests pursuant to 43 C.F.R. § 2.20(c).  Copies of those requests are attached as Attachments E and F. NPCA asserted that there exists a compelling need for the information sought because (i) all the key information sought about the management of the National Park System during the 2018-2019 lapse in Government appropriations had not become public, (ii) there was an imminent possibility of another lapse in appropriations, and (iii) the information sought would allow NPCA to exercise its rights.  Those rights include, among other things, NPCA's right to petition the Government not to repeat the same policies implemented by DOI and NPS in their management of the National Park System during the prior Government shutdown and to educate the public and policy makers for support of its petitioning activity.

33.     On July 11, 2019, the FOIA Officer for the NPS headquarters granted the request for expedited processing.  Nevertheless, NPS has still not made any determinations in response

to the Requests or the Supplemental Requests and has produced no responsive documents almost seven months after that initial request.

34.     As of the filing of this Complaint, NPCA has received no response of any nature from the Office of the Secretary, either to its January 28, 2019 FOIA request or to its July 8, 2019 Supplemental Request or to its July 8, 2019 request for expedited processing.

35.     As of the filing of this Complaint, the NPS Pacific West Regional Office has not made any determinations as to NPCA's February 21, 2019 FOIA request for documents from JOTR or as to its July 8, 2019 Supplemental Request or as to its request for expedited processing, and that office has produced no responsive documents.

## CLAIM FOR RELIEF

### (*against all Defendants)*

36.     Plaintiff incorporates each of the foregoing paragraphs of this Complaint.

37.     Pursuant to FOIA, 5 U.S.C. § 552(a), Plaintiff has a statutory right to access the requested agency records in a timely manner.

38.     Defendants have failed to comply with the time limits prescribed by FOIA, 5 U.S.C. § 552(a)(6)(A)(i) and § 552(a)(6)(E)(iii).  Defendants have made no determinations as to NPCA's FOIA requests and have produced no responsive documents.

39.     Defendants are improperly and unlawfully withholding public records requested by Plaintiff pursuant to 5 U.S.C. § 552.

40.     Plaintiff has fully exhausted any administrative remedies and now turns to this Court to enforce FOIA's guarantee of public access to agency records and to remedy the agencies' withholding of that access.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff NPCA respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants, as follows:

A.      Declaring that Defendants' failure to make a determination on whether to comply with Plaintiff's requests is in violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i);

B.      Ordering Defendants promptly to provide a determination on Plaintiff's FOIA Requests and the Supplemental Requests as required;

C.      Ordering Defendants promptly to conduct searches that are reasonably calculated to locate all documents responsive to Plaintiff's FOIA Requests and the Supplemental Requests;

D.      Entering a permanent injunction enjoining Defendants from withholding responsive records—or reasonably segregable portions of lawfully exempt records—and require that Defendants provide such records within 21 days of this Court's order, at no cost to Plaintiff;

E.      Declare that Plaintiff is entitled to a waiver of all document search, review, and duplication fees because disclosure of the requested records is in the public interest, the documents are likely to contribute significantly to public understanding of the operations or activities of the Government, and is not primarily in the commercial interest of the Plaintiff;

F.      Award Plaintiff's reasonable attorney's fees and other litigation costs reasonably incurred, pursuant to 5 U.S.C. § 552(a)(4)(E)(i);

G.      Retain jurisdiction over this action until Defendants are in compliance with FOIA and every order of this Court; and

H.      Award any other relief the Court may deem just and proper.

August 16, 2019

By:    */s/ Ryan Watts*
       Robert D. Rosenbaum
       D.C. Bar No. 90498
       Ryan Z. Watts
       D.C. Bar No. 478395
       ARNOLD & PORTER KAYE SCHOLER LLP
       601 Massachusetts Ave., NW
       Washington, DC  20001-3743
       202-942-5000
       Robert.Rosenbaum@arnoldporter.com
       Ryan.Watts@arnoldporter.com